UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

      -against-

KESTON LETT,                                           17 CR 628 (MKB)

      Defendant.
----------------------------------------------------------X

      PLEASE TAKE NOTICE, that upon the annexed Affirmation of Michelle A. Gelernt, Esq., and the attached Memorandum of Law, the undersigned will move this Court before the Honorable Margo K. Brodie, United States District Judge for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York, at a time to be designated by the Court, for an order instructing the Government to state whether it intends to continue with its criminal prosecution of Mr. Lett. If so, the Bail Reform Act governs and Mr. Lett must be released from ICE custody in accordance with the conditions set by the Honorable Margo K. Brodie. If the Executive Branch chooses not to release Mr. Lett, we will move this Court for an order, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, dismissing the indictment with prejudice, and granting such further relief as the Court deems just and proper.

Dated: Brooklyn, New York
       December 28, 2017

                                                      Respectfully submitted.

                                                      Federal Defenders of New York, Inc.

                                By:_____/s/_____
                                         Michelle A. Gelernt
                                         One Pierrepont Plaza, 16th Floor
                                         Brooklyn, New York 11201
                                         (718) 330-1204

TO:     BRIDGET RHODE
        Acting United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
        718-254-6013

        Attention:  David J. Lizmi

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA,

       -against-                                        **AFFIRMATION**

KESTON LETT,                                       17 CR 268 (MKB)

       Defendant.
---------------------------------------------------------X

       I, MICHELLE A. GELERNT, hereby affirm under the penalties of perjury, pursuant to 28 U.S.C. §1746, that:

    1. I am an attorney associated with the Federal Defenders of New York, and have been appointed by the Court to represent defendant KESTON LETT in this action. I make this declaration in support of a motion pursuant to Rule 12 of the Federal Rules of Criminal Procedure to dismiss the indictment with prejudice.

    2. The statements contained in this Affirmation are based on information and belief, conversations with the other attorneys who have worked on the case, conversations with the government and my review of documents and other evidence related to the case. Defense counsel is not yet in receipt of all of the relevant documents from ICE necessary to make this motion.

    3. On October 16, 2017, Mr. Lett, a citizen of Trinidad and Tobago traveled from Port of Spain, Trinidad and Tobago to John F. Kennedy Airport aboard a JetBlue flight using a tourist visa. That same day, Mr. Lett was arrested and paroled into the United States for purposes of criminal prosecution. (*See* Arrival Record, attached hereto as Exhibit A.) On October 17, 2017, he was presented before Magistrate Judge Steven L. Tiscione on the complaint charging him

with importation of a controlled substance, 21 USC § 952(a) and §960. *See* Dkt. No. 1. Mr. Lett waived preliminary hearing and reserved his right to make a bail application. Magistrate Judge Tiscione issued a permanent order of detention with leave to renew.

    4. On November 13, 2017, Mr. Lett was indicted and charged with one count of importation of cocaine and one count of possession of cocaine with intent to distribute. *See* Dkt. No. 5. On November 17, 2017, Mr. Lett was arraigned on the Indictment before Magistrate Judge James Orenstein and entered a plea of not guilty to the charges in the Indictment. The parties jointly moved the court for an order of excludable delay in order to engage in plea negotiations. Magistrate Judge Orenstein granted the application and ordered that time be excluded from the speedy trial calculation from November 17, 2017 to December 15, 2017, the date of the initial status conference scheduled before the District Court.

    5. On December 15, 2017, a detention hearing was held. The District Court ordered Mr. Lett released on a $30,000 bond secured by his aunt, Albertha Elliott. Mr. Lett did not sign the bond on that date, rather the detention hearing was continued to Monday December 18, 2017 before the duty magistrate, for Mr. Lett to sign the bond. Counsel requested the continuation of the detention hearing in order to assure that Mr. Lett was brought to court with a supply of medication until such time as defense counsel could secure medical treatment for Mr. Lett. Additionally, the parties jointly moved the District Court for an order of excludable delay in order to continue to engage in plea negotiations. The District Court granted the application and ordered that time from December 15, 2017 to January 26, 2017 be excluded from the speedy trial calculation. A second status conference was scheduled before the District Court for January 26, 2017 at 10:00 a.m.

6. On December 18, 2017, Mr, Lett appeared before Magistrate Judge Steven M. Gold, signed the bond, and was ordered released. However, Mr. Lett was not, in fact, released but was held for immigration on an immigration detainer. (*See* Immigration Detainer, attached hereto as Exhibit B.) On Tuesday, December 19, 2017, Mr. Lett was produced to the Eastern District courthouse, where he was transferred into immigration custody. After being taken into immigration custody, he was brought to JFK Airport. While detained at JFK, Mr. Lett contacted defense counsel. After speaking with Mr. Lett, defense counsel requested that Mr. Lett inquire if the CPB agent would be willing to speak to defense counsel. The CBP agent then agreed to speak to defense counsel. During this brief telephone conversation, the agent verified that, under previous policy, arriving aliens who were charged with federal crimes and released on bail pursuant to the Bail Reform Act, were routinely released after a brief detention at JFK. The CBP agent further informed defense counsel that, as a result of a recent executive order, CBP was now instructed to request "bed space" in an immigration detention facility for arriving aliens charged with federal crimes, but released on bond pursuant the Bail Reform Act.

7. After being detained for a few hours at JFK, Mr. Lett was brought briefly to immigration court before being taken to the Hudson County Correctional Facility. According to the Online Detainee Locator System, Mr. Lett is remains in custody at the Hudson County Correctional Facility.[1] According to the Executive Office for Immigration (EOIR), Immigration Case Status Information hotline, Mr. Lett's A-Number either "does not match a record in the system" or his "case has not been filed with the immigration court."

---

[1] https://locator.ice.gov/odls/#/results

3

Dated: Brooklyn, New York
December 27, 2017

_____/s/_____
MICHELLE A. GELERNT

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------  x
                                                        :
UNITED STATES OF AMERICA                                :
                                                        :
                 - v -                                  :     17 CR. 268 (MKB)
                                                        :
KESTON LETT,                                            :
                                                        :
                           Defendant.                   :
------------------------------------------------------  x
```

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KESTON LETT'S MOTION TO DISMISS THE INDICTMENT IF MR. LETT IS NOT RELEASED FROM ICE CUSTODY

MICHELLE A. GELERNT
Attorney for Defendant
KESTON LETT
Federal Defenders of New York, Inc.
One Pierrepont Plaza - 16th Floor
Brooklyn, New York 11201
Tel.: (718) 330-1204

CC:   BRIDGET M. RHODE. Acting United States Attorney
      Eastern District of New York
      271 Cadman Plaza East
      Brooklyn, New York 11201
      Attn: DAVID J. LIZMI
      Assistant United States Attorney

**PRELIMINARY STATEMENT**

The Executive Branch has a choice to make: whether to proceed with the criminal case against Mr. Lett or whether to proceed instead with his removal. If the choice is to proceed with this criminal prosecution, Mr. Lett must be released from custody on the conditions set by Your Honor (which have been met). If the choice is effectuating removal, then the criminal case must be dismissed with prejudice. What the Executive Branch cannot do is to use its immigration authority to detain Mr. Lett while pursuing its criminal case against him, in contravention of the Bail Reform Act. *See United States v. Benzadon Boutin*, 17-cr-590 (DLI) ( E.D.N.Y. Dec. 26, 2017)[1] (Defendant charged with attempted money laundering.); *United States v. Ventura*, No. 17-cr-418 (DLI), 2017 WL 5129012 at *2 (E.D.N.Y. Nov. 3, 2017); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012) ("What neither ICE not any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA.") ; *accord United States v. Hernandez-Bourdier*, No. 16-cr-222, 2017 WL 56033, at *11 (W.D. Pa. Jan. 5, 2017); *United States v. Stepanyan*, No. 15-cr-234, 2015 WL 4498572 at *3 n.4 (N.D. Cal. July 23, 2015); *United States v. Valadez-Lara*, No. 14-cr-204, 2015 WL 1456530 at *4 (N.D. Ohio Mar. 30, 2015); *United States v. Clemente-Rojo*, No. 14-cr-10046, 2014 WL 1400690, at *3 n.2 (D. Kan. Apr. 10, 2014); *United States v. Blas*, No. 13-cr-178, 2013 WL 5317228, at *6-8 (S.D. Ala. Sept. 20, 2013). In other words, once a court determines that the Bail Reform Act requires a defendant's release, the Executive Branch cannot make an end-run around the Court's determination by taking the defendant into immigration custody *pending trial*.

---

[1] (Order attached hereto at 1.)

That is exactly what the Executive Branch has done here. After bail conditions were set by Your Honor and the bail was perfected before Magistrate Judge Gold, and Mr. Lett was "released" from criminal custody, he was transferred into ICE custody. The purpose of his continued detention, though was not for the Executive Branch to proceed with its immigration case. Rather, it was solely to hold Mr. Lett in connection with his criminal case. Mr. Lett has been in immigration custody for a week, and as far as defense counsel can discern, no efforts have been made to proceed with Mr. Lett's removal hearing. Even if ordered removed, Mr. Lett, having been paroled into the United States for prosecution, may not be removed from the country without the express permission of the United Stated Attorney. *See* 8 CFR §215.3(g). Thus, the Executive Branch is violating Mr. Lett's statutory rights under the Bail Reform Act, and impinging on his rights under the Fifth, Sixth and Eighth Amendments. Accordingly, unless Mr. Lett is released pursuant to the Bail Reform Act, we move that the criminal case be dismissed immediately and with prejudice.

## BACKGROUND

Keston Lett is a citizen of Trinidad and Tobago. On October 16, 2017, arriving in the United States, Mr. Lett was arrested by federal agents and charged, pursuant to a criminal complaint, with Importation of a controlled substance in violation of 21 U.S.C. §952(a) and (960). *See* Dkt. No. 1. He was paroled into the United States for the purposes of Criminal Prosecution. *See* Exhibit A. A permanent order of detention was issued with leave to renew when and if defense counsel was prepared to present a bail package. Mr. Lett was indicted on November 13, 2017 and appeared before Magistrate Judge Tiscione on November 17, 2017 for his arraignment on the Indictment. The case was then adjourned for an initial status conference

3

before Your Honor on December 15, 2017.

At the status conference defense counsel presented a bail package to the Court. The Government opposed Mr. Lett's release. After a hearing, the Court set conditions of release including the following: a $30,000 Personal Recognizance Bond, co-signed by Mr. Lett's aunt Albertha Elliott; pretrial supervision as directed by Pretrial Services; and home incarceration enforced by electronic monitoring. *See* Dkt. No. 12, 13.

Mr. Lett was "released" from criminal custody on December 18, 2017, having satisfied the conditions of his bond. *See* Dkt. No. 12, 13. After his "release" from criminal custody, Mr. Lett was returned to the MDC pursuant to an ICE detainer. *See* Exhibit B. The detainer purports to instruct a law enforcement agency to detain an alien for up to 48 hours to allow ICE to assume custody if it so chooses for the purpose of removing the alien from the United States.[2] On December 19, 2017, Mr. Lett was transferred into ICE custody where he remains to this day.

---

[2] *See generally* 8 C.F.R. § 287.7(d).

4

**ARGUMENT**

**WHERE THE EXECUTIVE BRANCH HAS CHOSEN TO CRIMINALLY PROSECUTE A DEPORTABLE ALIEN, THE BAIL REFORM ACT GOVERNS HIS RELEASE; ONCE RELEASE CONDITIONS HAVE BEEN SET, HIS CONTINUED DETENTION BY ICE VIOLATES THE BAIL REFORM ACT AND REQUIRES DISMISSAL OF THE CRIMINAL CASE WITH PREJUDICE IF HE IS NOT RELEASED.**

Superficially, there is tension between the release provisions of the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3141, *et seq.*, and the Executive Branch's power to detain aliens under the Immigration and Nationality Act of 1965 ("INA"), 8 U.S.C. § 1101, *et seq.* The applicable statutes and regulations, however, make clear that criminal prosecutions take priority over removal and deportation; that the *sole purpose* of immigration detention is to facilitate removal; and that, unless the Executive Branch intends in an individual case to forego criminal prosecution, it is the BRA which governs pretrial release. *See United States v. Benzadon Boutin*, 17-CR-590 (DLI) (E.D.N.Y. Dec. 26, 2017); *United States v. Ventura*, No. 17-cr-418 (DLI), 2017 WL 5129012 (E.D.N.Y. Nov. 3, 2017); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012). Thus, whatever tension exists between the two acts is easily dissipated by the Executive Branch's decision to proceed with a criminal prosecution. Once the Executive Branch has made that determination, a defendant who has met the conditions for release under the BRA must, in fact, be released. As Chief Judge Simon explained in *Trujillo*:

> The government may be correct that ICE retains the ability to take [a defendant released under the BRA] back into administrative custody – for the purpose of deporting him – but nothing permits ICE (or any other part of the Executive Branch) to disregard the congressionally-mandated provisions of the BRA by keeping a

5

> person in detention for the purpose of delivering him to trial when the BRA itself does not authorize such pretrial detention.

*Trujillo-Alvarez*, 900 F Supp. 2d at 1178.

### A. The Bail Reform Act sets out a comprehensive regulatory regime governing pretrial release and detention.

The Bail Reform Act provides a comprehensive set of rules and procedures for pretrial release and detention. *See Trujillo-Alvarez*, 900 F. Supp. 2d at 1169. As a general matter, the Act strongly favors release: a court is *required* to release a defendant unless there are no conditions that could reasonably assure his appearance as required or the safety of the community. 18 U.S.C. § 3142(b), (c), (e).

The presumption that defendants' liberty be preserved pending trial has deep roots in our constitutional heritage, stretching back to the Eighth Amendment's prohibition on excessive bail and beyond. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987) (tracing the Bail Clause's origins to the English Bill of Rights of 1689). In accordance with this presumption, when Congress enacted the Bail Reform Act in 1966, it declared that the legislation's purpose was "to revise the practices relating to bail to assure that all persons, regardless of their financial status, *shall not needlessly be detained* pending their appearance to answer charges . . . when detention serves neither the ends of justice nor the public interest." Pub. L. 89–465, §2, 80 Stat. 214, 214 (emphasis added). The same principle guided Congress's revision of the Act in 1984 and subsequent amendments. As the Supreme Court noted in upholding the 1984 revision, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 785.

The Act requires a court to release a defendant unless there are no conditions that will

6

reasonably assure a person's appearance in court or the safety of the community. 18 U.S.C. §3142(e). Where more restrictive conditions than release on a personal recognizance or unsecured bond are necessary to achieve the statutory goals, a court is instructed to impose the least restrictive further condition, or combination of conditions that achieve those goals. 18 U.S.C. §3142(a), (c). Where detention is sought, the Act sets forth a non-exhaustive list of factors for the court's consideration at a detention hearing. 18 U.S.C. §3142(f), (g).

A defendant's immigration status is not a separate or dispositive factor in the analysis, as "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *United States v. Adomako*, 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2004). Instead, courts will weigh a defendant's immigration status in its "risk of flight" analysis under 18 U.S.C. §3142(g)(3), but it is simply one consideration. *See United States v. Stepanyan*, 2015 WL 4498572 at *2 (N.D. Cal. July 23, 2015); *cf. United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (2009) ("If the Court accepted the government's argument [that an ICE detainer required detention pending trial], Congress's carefully crafted detention plan, set forth at 18 U.S.C. §3142, would simply be overruled by an ICE detainer."); *United States v. Montoya-Vasquez*, 2009 WL 103596 at *5 (D. Neb. Jan. 13, 2009) ("If Congress wanted to bar aliens with immigration detains from eligibility for release, it could readily have said so, but did not.").[3]

The BRA, does however, specifically set forth how the release and detention provisions of the Act are meant to interact with the administrative detention provisions of the INA. In the

---

[3] DHS itself appears to acknowledge this aspect of Congress's intent by including a disclaimer on all recent editions of the form it uses to lodge a detainer to the effect that "[t]his detainer arises from DHS authorities and should not impact decisions about the alien's bail . . . ." *See* Ex. B, ICE Detainer, Form I-247A (2/17 Ed.).

7

BRA, Congress "reconciles the release and detention statutes with the administrative deportation statutes" by (1) "expressly instruct[ing] this Court to disregard the laws governing release in INS deportation proceedings when it determines the propriety of release or detention of a deportable alien pending trial;" and (2) providing that,

> if the Court determines that the defendant is not a United States citizen or a lawfully admitted permanent resident and may flee or pose a danger to any other person or the community, it shall detain him for no more than ten days and direct the government's attorney to notify the appropriate immigration official. If such official does not take the defendant into custody during that ten day period, the defendant "*shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.*"

*Stepanyan*, 2015 WL 4498572 at *1 (italicized section quotes 18 U.S.C. § 3142(d), emphasis added; internal citation omitted).[4]

In sum, the BRA is intended to provide a comprehensive regime governing pretrial release and detention for all persons, including aliens, and is structured to strongly favor pre-trial release over detention outside of certain strictly demarcated circumstances. Allowing for detention under other circumstances would undermine Congress' carefully contemplated legislative scheme.

---

[4] *Stepanyan* concerned the question of whether an ICE detainer itself was reason to deny release under the BRA where a defendant had an extant warrant of removal, even though a magistrate court had otherwise found that there were satisfactory conditions of release. 2015 WL 4498572 at *1. The district court held that the defendant's immigration status was simply one factor to consider in the risk of flight analysis under 18 U.S.C. § 3142(b), (c), and (g). *Id.* In *Stepanyan*, after release conditions were set under the BRA, the defendant was taken into ICE custody, and the Government then petitioned for a writ of habeas corpus ad prosequendum. The defendant asked the district court to release Mr. Stepanyan for reasons including those argued in this motion.

8

B. **The Immigration and Naturalization Act provides for detention to facilitate removal; it does not provide for detention pending a person's criminal trial.**

The Immigration and Nationality Act (the "INA"), 8 U.S.C. §1101, *et seq.*, forms the backbone of immigration law in the United States. Among other things, the INA charges the U.S. Secretary of Homeland Security with "the administration and enforcement of . . . all laws relating to the immigration and naturalization of aliens, except insofar as . . . such laws relate to the powers, functions, and duties conferred upon the President, [or] Attorney General." 8 U.S.C. §1103(a)(1).

Nothing in the INA provides for the detention of a person solely for the purpose of producing him for criminal prosecution. Instead, the INA provides for detention for the purpose of removing a person. *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174 (citing 8 U.S.C. §1231). Indeed, the regulation governing detainers, the very means by which Mr. Lett was detained so that ICE could assume custody after he was "released" under the BRA, makes clear that the "detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, *for the purpose of arresting and removing the alien.*" 8 C.F.R. §287.7(a) (emphasis added).

Mr. Lett is not being detained for the purpose of removing him from the country. In fact, regulations promulgated under the authority of the INA expressly prohibit Mr. Lett's removal while the criminal case is pending, absent the approval of the U.S. Attorney's Office. *See* 8 C.F.R. §§215.2(a), 215.3. The pertinent regulations provide that "no alien shall depart, or attempt to depart, the United States if his departure would be prejudicial to the interests of the United States under the provisions of §215.3." 8 U.S.C. §215.2(a). And the departure of an alien who has a pending criminal case in a court in the United States *will be* "deemed prejudicial to the

9

interests of the United States." *Id.* §215.3(g). *See Benzadon Boutin* at 6, *citing* 8 C.F.R. §215.3(g); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017).

By both regulation and practice, the Executive Branch prioritizes criminal prosecution over removal proceedings. "Once the government has invoked the district court's jurisdiction in the criminal prosecution, it must comply with the Bail Reform Act." *Benzadon Boutin* at 6. Unless the Executive Branch changes its mind and decides to remove Mr. Lett instead of proceeding with this criminal prosecution, it must release him from ICE custody:

> If ICE takes custody of [defendant] for the purpose of removing or deporting him, there is little (and probably nothing) that this Court can do about that. . . . If, however, ICE declines to take custody of [defendant] for the purpose of removing or deporting him, then, as Congress plainly declared in the BRA, such a person shall be treated "in accordance with the other provisions" of that law, which require his pretrial release subject to the conditions imposed by [the Magistrate Judge]. What neither ICE nor any other part of the Executive Branch may do, however, is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA.

*Trujillo-Alvarez*, 900 F Supp. 2d at 1179; *accord Stepanyan*, 2015 WL 4498572, at *3 n.4; *Hernandez-Bourdier*, 2017 WL 56033 at *11; *Valadez-Lara*, 2015 WL 1456530, at *4; *Clemente-Rojo*, 2014 WL 1400690 at *3 n.2; *Blas*, 2013 WL 5317228, at *6-8; *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1137 (M.D. Fla. 2015); *see also Santos-Flores*, 794 F.3d at 1091. In short, as Chief Judge Irizarry recently held in both *Ventura* and *Benzadon Boutin*, the Government has to make a choice when it is dealing with a removable alien criminal defendant: it can release the defendant and proceed with the prosecution, or detain and then remove the person through normal immigration proceeding. *Benzadon Boutin* 8-9; *Ventura*, at 3; *See also United States v. Galitsa*, 17-cr-324, Dkt. No. 30 at 9. If the government takes the

10

former route, it must afford the defendant the protections of the BRA.

In this case, the government made its choice when CBP referred Mr. Lett to the U.S. Attorney, who agreed to prosecute, and CBP "paroled" him for that purpose. The relief Mr. Lett seeks is nothing more than his lawful due given the choice the government has already made: the benefit of his bond determination, or else the dismissal of this case. While the government could make that election in response to the requested relief--abandon the criminal case and pursue removal—it cannot have it both ways. *Benzadon*, 17-cr-590 (DLI), Dkt. No. 22 at 8; *Ventura*, 2017 WL 5129012 at 2.

The fact that Mr. Lett is an arriving alien does not change the calculus. In other cases the government has argued that ICE is both permitted and required to detain a defendant during the pendency of this criminal case under 8 U.S.C. §1225(b)(2)(A) because he is an "arriving alien" under 8 C.F.R. §1.2. (*See Ventura*, 17-cr-418, (DLI) (Dkt. No. 25, Gov't Mem. 6 – 8)). However, this misconstrues the applicable law and elides relevant facts of Mr. Lett's situation. As an arriving alien suspected of narcotics trafficking, Mr. Lett, could have been subjected to "expedited removal" under 8 U.S.C. §1182(a)(2)(C)(A). In other words, CBP could have quite literally sent him home on the next plane out; for whatever period he was obliged to wait, he would have been subject to detention under 8 C.F.R. §235.3(b)(2)(iii). But, that is not what happened. Mr. Lett was thereafter *not* detained as an "arriving alien" or under expedited removal authority; he was, as the Arrival Record reveals, "paroled for criminal prosecution" under a different provision, 8 U.S.C. §1182(d)(5)(A). *See* Exhibit A. That provision states:

> The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public

11

> benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and *when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled* and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. §1182(d)(5)(A) (emphasis added). The legislative history of this provision shows that "one of Congress' primary purposes was to allow parole for the purpose of prosecution." *Matter of Valenzuela-Felix*, 26 I&N Dec. 53, 56 (BIA 2012). *See also Matter of Badalamenti,* 19 I&N Dec. 623, 626 (BIA 1988) ("It is clear from the legislative history of [§1182(d)(5)(A)] that Congress intended to empower the Attorney General to parole an alien for the purpose of prosecution.") Parole for that purpose constitutes a qualifying "significant public benefit" under the statute.

Under the plain language of the statute, a noncitizen may be returned to ICE custody "when the purposes of such parole shall, in the opinion of the Attorney General, *have been served*." 8 U.S.C. §1182(d)(5)(A) (emphasis added). The immigration detainer, itself, specifies that the Department of Homeland Security intends to "resume custody" "upon completion of the proceeding or investigation." Exhibit B. Consistent with Congress' prioritization of prosecution over, the Board of Immigration Appeals has held in precedential opinions binding on immigration authorities that "the purposes of parole for prosecution are not served *until the criminal charges are resolved.*" *Matter of Valenzuela-Felix*, 26 I&N Dec. 53, 65 n.5 (BIA 2012) (emphasis added). *See also id.* at 57 ("Following any resolution of the criminal proceedings by the entry of a criminal conviction, the purposes of the parole have been served . . . ."); *Badalamenti*, 19 I&N Dec. at 624 (recounting that the noncitizen's parole was revoked "because

12

the criminal proceedings for which he was paroled were completed"). Thus, under §1182(d)(5)(A), a noncitizen who is arrested at the port of entry and paroled into the United States for prosecution may not "be returned to the custody from which he was paroled" and "continue to be dealt with in the same manner" as any other applicant for admission until the pending criminal matter has been resolved.

For these reasons, Mr. Lett's continued detention, notwithstanding Your Honor's determination that he should be released prior to trial, violates his statutory rights under the BRA and implicates his constitutional rights under the Fifth, Sixth and Eighth Amendments. The recognized remedy for these violations: if Mr. Lett is not released as required by the BRA, the criminal action must be dismissed with prejudice. *See Benzadon Boutin* at 8; *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180-81 (requiring defendant to be returned from ICE custody and released on bond, otherwise criminal case will be dismissed with prejudice); *see also Blas,* 2013 WL 5317228 at *7 n.12 (contemplating same); *Clemente-Rojo*, 2014 WL 1400690 at *3 n.2 (explaining that if, after release on bond in an illegal reentry case, ICE executes its detainer, the Court will dismiss the criminal case with prejudice: "In other words, the executive branch must make an election: prosecution or release to the detainer."); *Santos-Flores*, 794 F.3d at 1091 (endorsing court's action in *Trujillo-Alvarez*).

The Court's power to impose such a remedy is grounded in its "inherent supervisory powers over its processes and those who appear before it." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180 (citing *United States v. Hasting*, 461 U.S. 499, 505 (1963)). "These supervisory powers include, but are not limited to, the ability to implement a remedy for a violation of recognized rights." *Id.* (internal citation omitted); *see also Santos-Flores*, 794 F. 3d at 1091. This Court has

13

the power to prevent the Executive Branch from ignoring its obligations under the BRA by dismissing this case with prejudice if ICE does not release Mr. Lett. *See Trujillo-Alvarez*, 900 F. Supp. 2d at 1180.

## CONCLUSION

For the foregoing reasons, we request that the Court direct the Government to state whether it intends to continue with its criminal prosecution of Mr. Lett. If so, the Bail Reform Act governs and Mr. Lett must be released from ICE custody in accordance with the conditions set by Your Honor. If the Executive Branch chooses not to release Mr. Lett, the Court must dismiss the Indictment with prejudice.

DATED:   December 28, 2017
         Brooklyn, N.Y.

/s/
Michelle A. Gelernt
Deputy Attorney-in-Charge
Federal Defenders of New York
One Pierrepont Plaza, 16th floor
Brooklyn, NY 11201
Tel. (718) 330-1204

*Attorney for* Keston Lett

14